Larry ATKINSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–565.

Court of Appeals of Alaska.

May 17, 1985.

Bruce Davies and Richard Whittaker, Ketchikan, for appellant.

Mary Anne Henry, Dist. Atty., Ketchikan, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Larry Atkinson pled no contest and was convicted of one count of sexual assault in the first degree. Former AS 11.41.-410(a)(3) (a person commits the crime of sexual assault in the first degree if, being sixteen years of age or older, he engages in sexual penetration with another person under thirteen years of age). At the time Atkinson committed this offense it was a class A felony punishable `by a maximum penalty of twenty years' imprisonment, with presumptive terms, respectively, of six years for someone who used a firearm or caused serious physical injury, ten years for someone who had previously been convicted of a felony, and fifteen years for someone who had been previously convicted of two felonies. Former AS 12.55.-125(c). Atkinson was sentenced to ten years with four years suspended. He appeals contending the sentence is excessive. We affirm.

The record reflects that Atkinson sexually abused his daughter for approximately one and a half years from the time she was roughly seven years of age until the sexual abuse was discovered and criminal proceedings commenced when she was nine years of age. Atkinson conceded ten separate incidents. He stated that during eight of the incidents his conduct consisted of fondling, and he remembered only two of the incidents as having involved sexual penetration. In contrast, the victim reported multiple incidents of sexual intercourse. It appears that Atkinson's attempts at sexual contact and assault were vigorously resisted by the victim and that on numerous occasions he tied up the victim and severely beat her in order to force her cooperation in his efforts.[1] Superior Court Judge

---

1. The presentence report describes the sexual assaults as follows:

Thomas E. Schulz's sentencing remarks establish that he credited the victim's version of the relevant events.

Atkinson concedes that sexual assaults on young children are particularly significant and that his acts of violence tended to aggravate his offenses. He argues, however, that his obvious remorse, coupled with his diligent efforts to undertake psychological counseling and therapy after his offenses were discovered, served to differentiate his case from other cases in which we have approved sentences similar to the sentence imposed here. Atkinson's contentions are in part supported by a psychological report from Marjory K. Daly, M.S., Mental Health Specialist and Child Abuse Prevention Grant Coordinator at the Gateway Community Mental Health Center in Ketchikan. Ms. Daly reasoned that Atkinson's assaults on his daughter were not truly sexual crimes but rather were crimes of violence directed at other individuals in Atkinson's life. *Cf. State v. Lancaster,* 550 P.2d 1257, 1259 (Alaska 1976) (in which sexual assaults were similarly motivated). Ms. Daly reasoned that Atkinson's problems were treatable, and that a three-fold program, part of which had already been commenced, would result in Atkinson's rehabilitation. The approach would stress alcohol treatment, insight therapy for sexual deviancy, and assistance in value clarification.

Judge Schulz carefully considered the presentence report, a psychological evaluation of Atkinson, and testimony at the evidentiary hearing in light of the criteria established in *State v. Chaney,* 477 P.2d 441 (Alaska 1970). He found three statutory aggravating factors: AS 12.55.-155(c)(5) (particularly vulnerable victim); AS 12.55.155(c)(10) (conduct among the most serious included in the offense); [2] and AS 12.55.155(c)(18) (victim a member of defendant's family group). Judge Schulz considered whether AS 12.55.155(c)(2) (deliberate cruelty) was also established in the record in light of Atkinson's repeatedly tying his victim up and beating her and concluded on the basis of the evidence that it was not. Judge Schulz reasoned that the violence directed at the victim was solely to facilitate the sexual assault and was not intended to torture the victim or inflict gratuitous violence on her. We agree with the trial court's treatment of this aggravator. Judge Schulz specifically considered the defendant's prospects for rehabilitation, his apparent success in therapy, and the favorable reports received from the Gateway Community Mental Health Center. He reasoned, however, that the nature of the offense, the prolonged period of sexual assaults, the age of the victim, and the violence involved required stressing deterrence of others and affirmation of community norms over rehabilitation. Judge Schulz also expressly recognized that ag-

On December 31, 1982, Alaska State Trooper Robert Gorder, Social Worker Julie Barlow, and District Attorney Mary Anne Henry interviewed [D.M.A., Atkinson's wife] and her nine year old daughter, T.A. It was learned during the course of this interview that Larry Atkinson (the victim's father) had been sexually assaulting nine year old T.A. for over the last year and a half (approximately mid-1980 to December 23, 1982). These incidents occurred on a regular basis and usually took place when the defendant's wife was out of the home. The sexual assaults consisted of tying her up, punching her in the ribs and stomach, and punching her in the face (resulting in a black eye). The sexual assaults consisted of full penetration (intercourse) until ejaculation was reached. The defendant threatened his daughter by telling her that intercourse would keep occurring if she ever told anyone about this. In addition, after

each sexual assault he would inform his daughter that these acts would never happen again.

2. Since the victim was repeatedly beaten she suffered physical injury. *See* AS 11.81.-900(b)(40) ("physical injury" means physical pain or impairment of physical condition). Physical injury is an aggravating factor. AS 12.55.155(c)(1); *Woods v. State,* 667 P.2d 184, 187–88 (Alaska 1983). The trial court did not mention this factor. He apparently considered that this factor was subsumed within his finding that Atkinson's conduct was among the most serious within the definition of the offense of sexual assault in the first degree. This treatment of the relationship between the two factors finds support in *Juneby v. State,* 641 P.2d 823 (Alaska App.1982), *modified on rehearing* 665 P.2d 30 (Alaska App.1983).

gravated cases of sexual assault under prior law, such as this one, would require a sentence in the six- to ten-year range and only extraordinary cases would warrant a total sentence in excess of ten years. *State v. Brinkley*, 681 P.2d 351, 356 n. 3 (Alaska App.1984). Judge Schulz considered this case aggravated but not extraordinary and therefore imposed a sentence of ten years with four years suspended. Judge Schulz's findings of fact and his conclusions of law are supported by substantial evidence. The sentence imposed is not clearly mistaken. *State v. Woods*, 680 P.2d 1195 (Alaska App.1984); *see also Austin v. State*, 627 P.2d 657, 658 (Alaska App.1981).[3]

During the sentencing hearing Judge Schulz carefully considered the *Chaney* criteria and a number of our prior decisions discussing appropriate sentences for sexual offenders convicted under former law. *See, e.g., State v. Brinkley*, 681 P.2d 351 (Alaska App.1984); *State v. Rushing*, 680 P.2d 500 (Alaska App.1984); *Langton v. State*, 662 P.2d 954 (Alaska App.1983); and *State v. Doe*, 647 P.2d 1107 (Alaska App. 1982). Based on those cases Judge Schultz concluded that a sentence of up to ten years' incarceration could have been justified in Atkinson's case. Judge Schulz was troubled, however, by our decision in *State v. Morris*, 680 P.2d 1190 (Alaska App.1984). He viewed that case, in which we somewhat reluctantly affirmed a sentence of five years with five suspended for an individual convicted of one count of sexual assault in the first degree, former AS 11.-41.410(a)(4)(B), as inconsistent with our other cases and as perhaps requiring a more lenient sentence in Atkinson's case. *Morris* is distinguishable in a number of relevant particulars from the present case. Morris' victim was his fourteen-year-old step-daughter; Atkinson's victim was his seven- to nine-year-old daughter. Morris sexually abused the victim between eight and thirty-five occasions between May and September of 1981. Atkinson, in contrast, abused his victim over a one and a half year period. Morris used no force and in fact had seduced his victim into what the victim apparently perceived as a romantic relationship. In contrast, Atkinson frequently tied his victim up and used physical violence to attain his goal. Judge Cutler found that Morris' victim had suffered no psychological damage from her relationship with Morris. This finding was supported by substantial expert testimony. In fact Judge Cutler found, based upon psychiatric testimony, that imposition of a sentence of imprisonment on Morris would have caused his victim substantial psychological damage. In contrast, there was evidence from which Judge Schulz found that Atkinson's victim suffered substantial and continuing psychological damage. According to Atkinson's presentence report, a social worker from the Department of Health and Social Services expressed the belief that the damage done to Atkinson's victim is almost irreparable. Since the incidents, she has exhibited many serious behavior problems and has become difficult to place in foster homes.

Judge Schulz recognized these distinctions but tended to discount them. He pointed out correctly that the law does not recognize a fourteen-year-old girl's consent as a defense to sexual assault. He also questioned the appropriateness of relying on psychological harm to the victim, which may be fortuitous from one case to another, as an appropriate distinction between the cases of Morris and Atkinson. In sum, Judge Schulz concluded that the primary justifications for a probationary sentence in *Morris* were the absence of a criminal

---

**3.** In *Austin* we held that a first felony offender should receive a substantially more favorable sentence than a second felony offender in the absence of aggravating factors or extraordinary circumstances. Atkinson received a sentence of incarceration equal to the presumptive sentence for a first felony offender utilizing a firearm or causing serious physical injury. In addition he received a four year suspended sentence. In applying the *Austin* rule we look primarily at the period of incarceration. *Tazruk v. State*, 655 P.2d 788, 789 (Alaska App.1982). The three aggravating factors found by Judge Schulz satisfy the *Austin* rule and permit the sentence imposed here.

record, the relatively brief duration of his offense, and his amenability to rehabilitation. All but the second factor are present in Atkinson's case. We respectfully disagree with this aspect of Judge Schulz's conclusion.

■■■ This court and the Alaska Supreme Court have always considered the impact on the victim and, by extension, the victim's family, proper sentencing considerations.[4] Consistent with this conclusion, Alaska appellate courts have always considered psychological damage to the victim an aggravating factor. For example, while a defendant may not rely upon his fourteen-year-old victim's consent, her attitude toward the abuse and the extent to which she felt exploited would certainly be relevant, though perhaps not conclusive, in determining whether she had in fact suffered psychological damage as a result of the relationship.[5]

■■■ An additional factor of primary importance distinguishes Morris' case from that of Atkinson. Where the state appeals a sentence contending that it is too lenient, we may not increase the sentence even though we find it clearly mistaken. Our sole recourse is to disapprove the sentence as a message to all courts regarding appropriate sentences for those similarly situated. *Langton, Brinkley,* and *Rushing* adequately conveyed to the bench and the bar appropriate criteria for the sentencing of those convicted under prior law of sexual assaults on children. The primary lesson taught by *Morris* and the primary fact distinguishing Morris' case from Atkinson's was our disapproval of the state's seeming acquiescence to a sentence before the trial court and then attacking that sentence on appeal. The state has a substantial responsibility to alert the trial court to the relevant facts and the relevant law. Consequently, we specifically criticized the state's performance in the *Morris* case noting that a sentence in excess of three years would not have been too severe. 680 P.2d at 1194. We nevertheless concluded:

> In this case, unlike the situation considered in *Langton,* there is evidence from which the trial court could infer that a sentence of incarceration would have destroyed a viable family and

4. As an example three drunk drivers possessing identical mental states and engaging in identical acts could be charged, respectively, with drunk driving for losing control of a vehicle and turning over in a ditch without any injury to any person; assault in the first degree for turning over in a ditch and seriously injuring a passenger; and manslaughter for turning over in a ditch and killing a passenger. In these three situations the perhaps fortuitous injury to the victims would constitute the sole distinguishing factor and yet justify substantially disparate sentences.

5. Judge Schulz also recognized that each criminal case may be distinguished from every other criminal case in terms of the defendant's mental state, the harmfulness of his or her acts, and the resulting injuries to the victim. Consequently, he expressed some uncertainty regarding our frequently repeated contention that "typical offenses" should result in presumptive or near presumptive sentences and only atypical offenses should result in aggravated or mitigated sentences. "If defendants and their victims are not fungible," Judge Schulz seems to ask, "how can any offense be deemed typical or atypical?" We use the phrase "typical offense" as a term of art to describe those situations in which statutory aggravating or mitigating factors are not established or if established would not, in light of the totality of the circumstances, warrant a court considering a presumptive sentence in aggravating or mitigating that presumptive sentence. *See Juneby v. State,* 641 P.2d 823, 838 (Alaska App.1982), *modified on other grounds,* 665 P.2d 30 (Alaska App.1983) (the mere fact that aggravating factors are established by clear and convincing evidence does not of itself require an increase in a presumptive term). If the facts of a given case would not warrant aggravation or mitigation of a presumptive term, the case is a typical offense and the same factors would not warrant deviation from the *Austin* rule. *See Brezenoff v. State,* 658 P.2d 1359, 1362 (Alaska App.1983) (the *Austin* rule requires that a first felony offender who is not subject to presumptive sentencing receive a more favorable sentence than the same offender would receive for the same crime committed under the same circumstances if he or she were subject to presumptive sentencing). An atypical offense, in contrast is one in which either aggravators or mitigating factors preponderate to the point that modification of an otherwise presumptive term would be warranted. We recognize that cases which could properly be sentenced under AS 12.55.165–.175 would also qualify as atypical offenses.

caused long-term psychological damage to the victim. In recommending periodic incarceration on weekends, the state took a position that may have encouraged Judge Cutler to give substantial consideration to keeping the Morris family together and to accept the evidence that this was possible. In light of the evidence and in light of the position taken by the state at the sentencing hearing, we do not disapprove the sentence imposed.

680 P.2d at 1194. We nevertheless utilized the *Morris* opinion to reiterate a substantial concern based on our reading of other cases:

> We are particularly concerned with what appears to be a recurring problem where the state takes a generally passive position at sentencing and all but endorses the sentence ultimately imposed and then inconsistently challenges that sentence as too lenient on appeal.

680 P.2d at 1194 n. 4, *citing State v. Jensen,* 650 P.2d 422, 425 (Alaska App.1982).

In this case the state adequately carried out its responsibilities and we find nothing to criticize in the district attorney's presentations to the trial court or in the sentence imposed.

Despite our minor disagreement with Judge Schulz regarding the significance of *State v. Morris,* we believe his handling of this difficult case was exemplary throughout. We are reminded of remarks we made regarding another judge's sentencing at an earlier time and feel that they are equally applicable to Judge Schulz's treatment of this case:

> [The sentencing judge] is to be commended for his careful consideration of this case. He explained in detail his reasons for the sentence. His remarks, in our opinion, reflect a thorough understanding of the goals of sentencing and provide an excellent example for others engaged in the sentencing process.

*Minchow v. State,* 670 P.2d 719, 720 (Alaska App.1983).

The sentence of the superior court is AFFIRMED.